No. 3584

Second Circuit

GROSCH v. DIXIE OIL COMPANY, INC.

(March 24, 1930. Opinion and Decree.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Hunter, Morgan & Hunter, of Shreveport, attorneys for defendant, appellee.

ODOM, J. The district judge before whom this case was tried submitted a written opinion in which he has stated the issues, his findings of fact, and his conclusions. That opinion in full is as follows:

"Plaintiff sues for compensation at the rate of $20.00 per week for four hundred (400) weeks for a total disability alleged to have resulted from an accident which occurred at about eight o'clock on the morning of May 5th, 1928. The plaintiff testified that he was foreman or gang pusher of a gang of men in the employ of the Dixie Oil Company, defendant, on said date, and at the time of the alleged accident, he and six other men were attempting to move a ten-inch pipe about twenty feet long. That there were four men carrying the pipe at the front end and two men and himself carrying same at the rear end of said pipe. That the pipe was being carried on carrying irons or sticks, one man at the end of each stick used, with the exception of himself, and that he was assisting in the carrying of the pipe by inserting a stick in the rear end of same. That one of the men on the front end stumbled or slipped and dropped the load, and simultaneously therewith, the other man, in order to avoid injury, dropped the load, and that it fell upon him, dislocating and severely injuring his spine. That immediately thereafter he reported the matter to one Gore, his superior. That said Gore requested him to continue work as they were short of men. That he stayed on the job until about 12:30, at which time he went home and sent for a doctor.

"He was corroborated in his testimony by two witnesses, Adel Ivans and Paul Goodson, both of whom were assisting in carrying the load on the front end. Ivans testified that when he looked back, after having dropped the pipe that the plaintiff was bending over "mightily", and complained of having hurt his back, and that the plaintiff called Mr. Gore and told him that he had hurt his back but that he did not know how bad but he would like to go home, but that the plaintiff did not go home but hung around until about noon.

"Paul Goodson, who was also assisting in carrying the front end of the load, testified to practically the same state of facts.

"Undoubtedly, the plaintiff has received an injury to his back, the objective symptom of which is obvious, both to sight and touch. It consisted in the slipping forward of the fourth lumbar vertebra for at least a half inch on the fifth lumbar vertebra, and has an outward appearance of a slight indentation in the region of the fourth lumbar vertebra and a pronounced protuberance of the fifth lumbar vertebra.

"The experts who testified in the case are all of the opinion that the displacement resulted from traumatism, and that when said traumatism occurred, plaintiff

suffered immediately an intense and acute pain in the region of his back.

"It therefore appears that on the day alleged an incident occurred which may have caused the injury complained of. That the injury complained of did result from said incident, is testified to by the plaintiff and his said testimony is corroborated by the objective evidence of the injury and the negative evidence of himself and other witnesses to the effect that he had no injury to the back prior to the date of the incident.

"We are of the opinion, however, that the plaintiff's testimony, and the testimony of the witnesses who appeared for him, is rendered highly improbable by the conduct of the plaintiff immediately following the accident. The normal reaction of a person receiving so severe an injury with so marked an objective symptom thereof could not be in keeping with that of plaintiff. A person acting normally under such circumstances, and in keeping with the ordinary course of human conduct, would be expected to immediately quit work, report the accident to those in authority, request that he be taken home and that something be done to alleviate the pain and intense suffering which he would be expected to have in the region of the injury. Following this, it would be expected that such person, under such circumstances, would immediately demand compensation from the defendant, his employer.

"But, as shown by a fair preponderance of the testimony in the case, what actually occurred was this: that the plaintiff continued on the job from the time of the alleged accident without particular complaint of pain in the region of the back until noon, at which time he requested that he be allowed to go home, stating at the time that he was not feeling very well. He did not report to his superiors that an accident had occurred. He was taken home where he sent for his physician, Dr. Collins. Dr. Collins found, upon his arrival, that the plaintiff was suffering with pleurisy with effusion, and that he had fever of 103-104 degrees. The plaintiff made no mention, so far as Dr. Collins could recall, of an accident or an injury to his back.

"On May 14th, 1928, the plaintiff was taken by Dr. Collins to the Highland Sanitarium for an X-ray examination, and there it was found by Dr. Rutledge that the plaintiff was suffering with pleurisy with effusion. Plaintiff on that occasion made no mention of an injury to his back and no X-ray picture was made at that time of that particular region.

"The plaintiff continued to be ill for a period of approximately four months, and although during that time he received no compensation from the defendant, he made neither demand nor complaint.

"Dr. Adair, expert radiologist, made an examination of plaintiff in November, 1928, and found a good deal of destruction of the fourth and fifth lumbar vertebrae with excessive destruction and ankylosis between those two vertebrae and the sacrum, with tilting of the vertebrae above that toward the left. He expressed the opinion that nature's repair had gone on in the region of the injury for a period of years; that the bony tissue was of such density in the region of the repair that it would take at least a year or two to build up so strong a fusion.

"Dr. Barrow, who made an X-ray examination of plaintiff, testified that in the region of the injury the lines of contact were so heavy and dense that they did not indicate a recent injury, and that while it was possible that the injury occurred as late as May 5th, 1928, he was inclined to think that it occurred before that time.

"None of the physicians or radiologists expressed the opinion that the injury complained of was contemporaneous with the alleged accident.

"Seven witnesses placed on the stand by the defendant testified that the plaintiff had told them of an injury to his back prior to May 5th, 1928, the date of the alleged accident. Four of them testified that they felt, at the request of plaintiff, the objective symptom of an injury or dislocation of the spine upon his back prior to the date of the alleged injury on May 5th, 1928.

"We must, therefore, conclude that in view of the remarkable conduct of the plaintiff, which is not at all in keeping with the ordinary conduct of human beings under like circumstances, considered with the evidence that his disability existed prior to the alleged accident, that the plaintiff was not injured on May 5th, 1928.

"It is contended by counsel for plaintiff that if a previous weakness to the back existed, and as a result of the accident on May 5th, 1928, the disability of the plaintiff was augmented or accelerated, the plaintiff should nevertheless recover. We do not think that plaintiff can recover on this theory in view of his positive testimony and that of his witnesses that he had no weakness in the region of the back prior to May 5th, 1928, and for the further reason that all of the testimony shows that the dislocation or displacement was caused by traumatism of a severe character.

"We are of the opinion that the injury was neither received nor accelerated on the date alleged.

"The plaintiff, having failed to make out his case with legal certainty, his demands should be rejected."

Counsel for appellant strenuously insists that the district judge erred in his findings on the facts. We find in the record counsel's application for a new trial made in the district court and have before us his exhaustive brief filed in this court, and in both we note the specific points on which it is claimed that the district judge erred. With this motion for a new trial and the brief before us, we have carefully read the record and have checked the evidence, page for page, in order to ascertain whether the judge did in fact err in his findings. Our conclusion is that he did not.

Counsel for appellant in his application for a rehearing and also in brief states that Dr. Collins, the physician to whom plaintiff went for treatment, testified that plaintiff did complain to him of an injury to his back. Counsel is in error, as Dr. Collins gave no such testimony. Dr. Collins did state that within one or two days after plaintiff went to him, he did complain of pains in his back or spine, but explained that plaintiff complained that he was aching from his head to his feet, which was, in the opinion of Dr. Collins,

natural for the reason that plaintiff had pleurisy with effusion and fever of 103 to 104 degrees. Dr. Collins specifically testified that plaintiff did not at any time complain of any acute pain in his back and if he mentioned any injury, he has no recollection of it. Dr. Collins diagnosed plaintiff's case as one of pleurisy. He carried plaintiff to the Highland Sanitarium in Shreveport, where he was examined by Dr. Rutledge. Dr. Rutledge confirmed Dr. Collins' diagnosis and treated him for pleurisy, extracting fluid from the pleural cavity. Dr. Rutledge says that neither the plaintiff nor Dr. Collins said anything to him about plaintiff's having received an injury to his back. Plaintiff was Dr. Collins' patient and was carried by him to the sanitarium for relief. Dr. Collins was not employed by the defendant company. It is wholly unreasonable, we think, to assume that if, as a matter of fact, plaintiff had told his physician that he had suffered an injury to his back while at work, the physician would have failed to mention that fact to Dr. Rutledge; and further, if plaintiff had been suffering from an injury to his back, it would seem reasonable that he would have told Dr. Rutledge so, even though he had failed to mention it to Dr. Collins. The testimony shows beyond question that such an injury as plaintiff claims he suffered while at work on May 5th would cause acute pain and suffering. One of the doctors testified that a slipping of the joint was in the nature of a dislocation, causing a tearing and laceration of the tissues and ligaments, and was likened to the spraining of an ankle, or any other joint, and would necessarily bring on immediate, intense pain. Plaintiff made no complaint of any such pains.

The testimony shows that a man, named LeBlanc, had his foot injured when the piece of piping was dropped, and that plain-

tiff walked over to where LeBlanc was and advised him to put in his claim for compensation. Plaintiff was therefore acquainted with the rules and the usual procedure in such matters, but he put in no claim for himself at the time and made none until in the month of August, four months later. He says he told Mr. Gore and Mr. Hodges that he had been injured. Mr. Gore and Mr. Hodges both emphatically deny that. Mr. Gore says that plaintiff approached him during the day, told him that he was feeling bad and that he would like to get off and see a physician, but that he said not a word about having been injured.

Counsel for appellant says that plaintiff was not able to go to the office and make claim for compensation sooner than he did. But Mr. Means, assistant superintendent, met plaintiff in Vivian in the month of July; plaintiff was then up and walking around, but made no claim for compensation until a month later.

As the district judge held, the testimony shows beyond question that at some time in his life plaintiff had suffered an injury to his back, but, taking the record as a whole, it cannot be held that he suffered that injury on May 5th while at work for the defendant company, as plaintiff alleges; nor can it be held that, assuming that plaintiff did have a weak back at that time, his weakened condition was accelerated or augmented while at work for defendant. Several witnesses testified that plaintiff told them that his back had been injured in some way through the handling of a gas engine at some time previous to May 5th. That testimony is corroborated by radiologists who testified that the condition of the spinal column at the region of the injury indicated that the injury was suffered before May 5th. There is testimony in the record which, construed alone, would warrant a finding that plaintiff was injured as he says he was. But we cannot rest the case alone upon those portions of the testimony which are favorable to plaintiff and ignore altogether that which is against him.

Our conclusion, after reading and checking the more than 200 pages of testimony, is that plaintiff has utterly failed to make out his case. The judgment appealed from is affirmed.